Anthony Ray DITTO and Lemar Ervin, Appellants,

v.

The STATE of Texas.

Nos. 1617–97, 1618–97.

Court of Criminal Appeals of Texas, En Banc.

March 10, 1999.

Dennis Sagebiel, Seguin, for appellant Anthony Ray Ditto.

Alex Hernandez, James L. Rodriguez, San Antonio, for appellant Lemar Ervin.

Frank Follis, First Assistant DA, Seguin, Matthew Paul, State's Atty., Austin, for the State.

***OPINION***

MEYERS, J., delivered the unanimous opinion of the Court.

Appellant Anthony Ray Ditto was charged with indecency with a child. In an unrelated case, appellant Lemar Ervin was charged

with sexual assault. These cases have been consolidated because they present similar issues.[1]

## I.

Pursuant to nearly identical plea bargains, appellants agreed to plead guilty in exchange for the State's recommendation that the punishment *not exceed ten years confinement.* Appellants also both filed applications for probation. In Ditto's plea bargain, the State noted it had "no recommendation on the Defendant's application for probation and/or deferred adjudication and will leave that decision up to the Court." In Ervin's plea bargain nothing was said about probation. The judge in each case imposed ten years of deferred adjudication probation, warning that a sentence up to the maximum of twenty years confinement could be imposed upon violation of the terms of the deferred adjudication probation.[2]

Appellants violated the terms of their deferred adjudication probations and the State in each case filed a motion to adjudicate guilt. In each case the trial judge imposed a sentence of twenty years imprisonment. Appellants appealed.

In *Ervin,* the Court of Appeals held the trial judge had violated the plea agreement by imposing a twenty year sentence. *Ervin,* 955 S.W.2d at 420. The court acknowledged the general rule that upon revocation of deferred adjudication probation the trial court can impose any sentence within the range of punishment allowed for the offense. *Id.* at 419. But the court opined that since a plea bargain was involved, the trial judge should have either imposed a sentence in accordance with the terms of the plea bargain (i.e., a sentence that did not exceed ten years confinement) or allowed appellant the opportunity to withdraw his plea. In reaching this conclusion, the Court of Appeals relied on Code of Criminal Procedure article 42.12, section 5(b), which provides in part that:

After an adjudication of guilt, *all proceedings,* including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal *continue as if the adjudication of guilt had not been deferred.*

(emphasis added). Pursuant to this provision, the appeals court reasoned that "in this case 'if the adjudication of guilt had not been deferred,' *see* art. 42.12, § 5(b), the trial judge would have been required to either sentence Ervin to no more than ten years' confinement, pursuant to the plea agreement, or to allow Ervin to withdraw his plea under article 26.13(a)(2)." *Id.* at 420. The Court of Appeals came to the same decision in *Ditto,* based on its resolution of *Ervin.*

We granted the State's petitions for discretionary review to determine whether a plea agreement in which the State expressly makes no recommendation on probation or does not address it at all, but sets a cap on punishment, in the absence of any other terms, does not preclude imposition of a higher sentence upon revocation of deferred adjudication probation.

The State argues the plea bargains at issue did not express any agreement as to the sentence to be imposed in the event appellants' guilt was deferred and then later adjudicated. Appellants argue the State made an express agreement regarding the term of confinement which was not limited in any way and the trial judges accepted and approved the terms and should thus either follow them or allow withdrawal of the pleas. Appellants also argue the language of article 42.12, section 5(b) mandates that all proceedings continue as if no deferred adjudication had been imposed; as such, the parties would be placed back in the positions they were in prior to the deferred adjudication, which would mean their plea agreements would still be in effect.

---

1. The Court of Appeals' decision in Ditto's case was based on its holding in Ervin's case. *Ervin v. State,* 955 S.W.2d 416 (Tex.App.—San Antonio 1997); *Ditto v. State,* No. 04–95–00957–CR slip op., 1997 WL 634512 (Tex.App.—San Antonio October 15, 1997).

2. Both Ervin and Ditto were admonished orally in court and via a written set of waivers, stipulations, and admonishments.

## II.

When a defendant pleads guilty pursuant to a plea bargain

> the court shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea. Should the court reject any such agreement, the defendant shall be permitted to withdraw his plea of guilty or nolo contendere[.]

TEX. CODE CRIM. PROC. art. 26.13(a)(2) (emphasis added). In neither case did the trial judge "inform" appellants by expressly stating whether he would "follow or reject" the plea bargain. Each judge stated only that he would defer a finding of guilt and place the defendant on probation for ten years.[3] Nonetheless, by imposing punishments that comported exactly with the terms of the plea agreements, the trial judges "informed" appellants by their *actions* that they would follow the terms of the agreements.[4] Deferred adjudication probation is viewed as a "punishment." *See Watson v. State*, 924 S.W.2d 711, 714 (Tex.Crim.App.1996) (by providing that deferred adjudication is now viewed as punishment for purposes of plea negotiations and by authorizing immediate appeal from deferred adjudication orders, legislature opted to make consequences of plea bargains for deferred adjudication equal to those involving other punishment recommendations). By granting deferred adjudication probation for a period of ten years the judges sentenced appellants within the terms of the parties' agreements that "the punishment not exceed ten years confinement."[5] The plea bargains did not specify that the punishment had to be for a term of confinement. The plea bargains did not make any provision as to a cap on punishment should appellants have to be sentenced again, in the event of adjudication of guilt. Rather, the parties agreed that the punishment assessed at that time could not be *more than* ten years confinement. In both cases appellants had applied for probation, so the parties were aware that probation was a punishment option. Thus, since appellants were sentenced within the terms of the plea agreements, the bargains were a *completed transaction* upon sentencing. Appellants got the benefit of their bargains with the trial judges' granting of deferred adjudication

---

**3.** In *Ervin*, after acknowledging the existence of the plea agreement and its terms, the trial judge announced, "I am going to place you on deferred adjudication. I am not going to send you to the penitentiary.... I will ... defer [my] finding [of guilt] and place you on probation in the form of deferred adjudication for a period of 10 years from today's date...." In *Ditto*, the judge acknowledged the existence and terms of the plea bargain, and recessed the matter for preparation of a pre-sentence report. After submission of the report, and in a subsequent hearing, the trial judge ruled, "I will defer any finding of guilt and place you on deferred adjudication probation for a period of ten years...."

**4.** We emphasize that much confusion can be avoided if the trial judge expressly states for the record whether he agrees to follow or reject the plea agreement. Nonetheless, where the agreement is comprised of one or two simple terms, and the trial judge by his actions comports exactly with those terms, and no party objects or otherwise indicates an understanding that the trial judge is rejecting the agreement, the judge can be viewed as having "informed the defendant" of his agreement to follow the bargain.

However, if the agreement is more complex and/or it is not clear whether the trial judge's actions comport with all of its terms, it cannot be concluded the judge agreed to follow the parties'

bargain. *See Ortiz v. State*, 933 S.W.2d 102, 104 (Tex.Crim.App.1996)(plurality op.)(holding trial judge never "accepted" plea agreement where he did not state acceptance or rejection of such agreement and he stated he wanted to hold off on deciding punishment until he had more information).

Even if the trial judges in the instant cases could somehow be viewed as rejecting the plea agreements when they sentenced appellants to deferred adjudication probation, nothing in the records indicates that appellants could not have withdrawn their pleas at that point. To the contrary, by requesting probation and accepting deferred adjudication probation as punishment, appellants demonstrated their choice not to withdraw their pleas.

**5.** In *Ervin*, the written plea agreement provided that the State agreed to recommend punishment with a "ten year cap." In court, the prosecutor stated, "the State has agreed to recommend a cap of ten years" confinement. In *Ditto*, there is no written agreement in the record, but the prosecutor stated, "The State recommends that the punishment assessed by the Court not exceed ten years' confinement" in TDCJ. Deferred adjudication probation for ten years "does not exceed ten years' [sic] confinement." Thus, the punishments assessed fell within the terms of the plea bargains.

probation within the ten-year sentencing cap. Upon violation of the deferred adjudication probations, the judges had no further obligation to comply with the plea bargains since the bargains had already been satisfied by the judges' initial sentencing.

### III.

■ The Court of Appeals' holdings that upon revocation of deferred adjudication, the trial judges should have either imposed a sentence in accordance with the plea agreement or allowed appellants to withdraw their pleas, were based in large part on its erroneous reading of article 42.12 § 5(b). Following is the Court of Appeals' reading of that provision, as expressed in *Ervin:*

When a defendant's deferred adjudication probation is revoked, "all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred."

*Ervin,* 955 S.W.2d at 419 (emphasis added). The statute actually reads, "*After an adjudication of guilt,* all proceedings . . . continue as if the adjudication of guilt had not been deferred." The Court of Appeals' reading replaces meaningful prefacing language, in-

creasing the statute's scope. The appeals court's position that appellants should have been allowed to withdraw their pleas makes little sense in light of the actual statutory language that assumes guilt has been adjudicated. Only *after guilt has been adjudicated* do proceedings continue as if there had been no deferred adjudication.[6] Accordingly, section 5(b) does not stand for the proposition that appellants were in a position to withdraw their pleas after the revocation of their deferred adjudication probations.

We hold the Court of Appeals erred in concluding the trial judges should have either imposed a sentence in accordance with the plea agreements or allowed appellants to withdraw their pleas following their violation of the terms of deferred adjudication probation.[7] The trial judges properly adjudicated appellants' guilt and did not abuse their discretion in sentencing appellants to a term of years beyond the number agreed to in the plea bargain agreements. In answer to the question presented, we hold that a plea agreement in which the State makes no recommendation on probation or does not address it at all, but sets a cap on punishment, is satisfied when the trial court assesses as punishment deferred adjudication probation within the terms of the cap. Imposition of a

---

6. For instance, after guilt is adjudicated, a defendant is entitled to a punishment hearing at which he should be provided the opportunity to present evidence. *Issa v. State,* 826 S.W.2d 159, 161 (Tex.Crim.App.1992); *see also Borders v. State,* 846 S.W.2d 834, 835 (Tex.Crim.App.1992).

7. The State says the Court of Appeals' opinion is in conflict with *Watson v. State,* 924 S.W.2d 711 (Tex.Crim.App.1996). Indeed, there is language in *Watson* that is contrary to the Court of Appeals' opinions and that supports our holding today. However, we do not rely on it as such discussion was dicta and *Watson* was a significantly different case than the ones presented here. Nonetheless, we note that in *Watson,* we made the following observations, which are consistent with our holding today:

. . . when a prosecutor recommends deferred adjudication in exchange for a defendant's plea of guilty or nolo contendere, the trial judge does not exceed that recommendation if, upon proceeding to an adjudication of guilt, he later assesses any punishment within the range allowed by law. That is because a defendant who trades a plea of guilty or nolo contendere for a recommendation by the prosecutor that a

judgment of guilt be delayed while he serves a period of community supervision necessarily accepts, at least in the absence of some express agreement to the contrary, that the prosecutor is making no recommendation at all concerning the term of years he may be required to serve if his probation is later revoked and the trial court proceeds to adjudicate him guilty of the charged offense.

In the instant cause, while it is true that the prosecutor did not recommend appellant be punished with ten years in the penitentiary should the trial court later enter a judgment of conviction in her case, the punishment of ten years actually assessed against her when her probation was revoked did not amount to refusal by the trial judge to implement the plea bargain. What the prosecutor recommended, and what appellant did in fact receive, was probation under a deferred adjudication order. Only if the prosecutor had also recommended that a period of incarceration less that ten years be imposed upon conviction [after the deferred] could it reasonably be said that the ten-year term ultimately assessed in this case exceeded the punishment recommendation given in exchange for appellant's guilty plea. *Watson,* 924 S.W.2d at 714.

higher sentence is not precluded upon proceeding to adjudication due to a violation of the terms of deferred adjudication probation since the bargain was satisfied and completed by previous assessment of the deferred adjudication probation.

The judgments of the Court of Appeals are reversed and the judgments of the trial courts affirmed.