Arturo **RAMIREZ**, Appellant,

v.

**STATE of Texas**, Appellee.

No. 13–01–00316–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Oct. 10, 2002.

Rehearing Overruled Nov. 14, 2002.

Philip Thomas Cowen, Brownsville, for Arturo Ramirez.

John A. Olson, Assistant County & District Attorney, Yolanda De Leon, District Attorney, Brownsville, for the State.

Before Chief Justice VALDEZ and Justices YAÑEZ and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

Appellant Arturo Ramirez pled guilty to aggravated sexual assault of a child without an agreement as to the punishment to be assessed by the trial court. The trial judge found appellant guilty and sentenced him to thirty-five years incarceration. From this conviction, he appeals two issues: (1) the imposition of a sentence based in part on misinformation and an accompanying violation of his due process rights by the prosecutors' failure to disclose to appellant that the State had no evidence to substantiate the misinformation; and (2) the voluntariness of appellant's plea due to changed circumstances in that he was unaware before he pled guilty that the prosecutors would inject the misinformation into his sentencing hearing. We conclude that appellant waived the first issue, we overrule the second, and affirm.

## PROCEDURAL HISTORY

The State charged appellant with one count of Aggravated Sexual Assault of a Child by contact[1] and one count of Inde-

---

1. Tex. Pen.Code Ann. §§ 22.021(a)(1)(B)(iv), (a)(2)(B) (Vernon Supp.2002).

cency with a Child.[2] The indictment also contained a repeat-offender enhancement paragraph alleging a prior felony conviction for burglary of a habitation.[3] On May 25, 2001, appellant pled guilty to the allegations of Aggravated Sexual Assault of a Child by contact. The State did not pursue either the Indecency with a Child count or the enhancement paragraph. The trial court recessed the plea proceeding for completion of a pre-sentence investigation and sex-offender paperwork. On July 6, 2001, the trial court reconvened for a sentencing hearing. Prosecutors in the case remarked during the sentencing hearing that penetration had occurred during the offense and that medical proof of that fact had been lost as the result of a delayed outcry. Thereafter, the court imposed a thirty-five year sentence. Appellant filed a motion for new trial on the general grounds that "[t]he verdict in this cause is contrary to the law and the evidence." The trial court denied the motion, and appellant filed a general notice of appeal. This appeal ensued.

## JURISDICTION

The threshold issue we must address is that of our own jurisdiction. *See Yarbrough v. State,* 57 S.W.3d 611, 615 (Tex.

---

2. TEX. PEN.CODE ANN. § 21.11(a)(2)(B) (Vernon Supp.2002).

3. TEX. PEN.CODE ANN. § 12.42(c)(1) (Vernon Supp.2002).

4. An agreement between the State and a defendant may be a plea bargain without having as one of its terms an agreed punishment recommendation. Any concession by the State in exchange for the defendant's guilty plea creates a plea bargain. *See Perkins v. Court of Appeals,* 738 S.W.2d 276, 282 (Tex. Crim.App.1987) (orig. proceeding) ("Plea bargaining is a process which implies a preconviction bargain between the State and the accused whereby the accused agrees to plead

App.-Texarkana 2001, pet. ref'd) (observing that an appellate court has the obligation to determine its own jurisdiction). Thus, we first analyze the State's contention that we have no jurisdiction because of a plea bargain between appellant and the State. The State argues that appellant's general notice of appeal, as a consequence of the plea bargain, does not meet the jurisdictional requirements of Texas Rule of Appellate Procedure 25.2(b)(3). TEX R.APP. P. 25.2(b)(3).

 Texas law limits a felony plea-bargaining defendant's right to appeal if "the punishment assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant." *Id.* In that event, the notice of appeal must specify that: (1) the appeal is for a jurisdictional defect; (2) the substance of the appeal was raised by written motion and ruled on before trial; or (3) the trial court granted permission to appeal. *Id.* Appellant's general notice of appeal does not invoke our jurisdiction, then, only if the record reflects a plea bargain in which the trial court assessed punishment no greater than that recommended by the State and agreed to by appellant, not if the record reflects just any plea bargain, as suggested by the State's argument.[4]

---

guilty or nolo contendere in exchange for a reduction in the charge, a promise of sentencing leniency, a promise of a recommendation from the prosecutor to the trial judge as to punishment, or some other concession by the prosecutor that he will not seek to have the trial judge invoke his full, maximum implementation of the conviction and sentencing authority he has . . . ."). Only a plea bargain that incorporates an agreed recommendation as to punishment and is accepted by the court, however, triggers the restrictive proviso of rule 25.2(b)(3). TEX R.APP. P. 25.2(b)(3); *see Dorsey v. State,* 55 S.W.3d 227, 233 (Tex. App.-Corpus Christi 2001, no pet.) (concluding that a written leniency agreement in exchange for the defendant's cooperation with

The State contends that the State agreed to permit appellant to plea to only "one [c]ount and the State did not require him to plea to the enhancement [p]aragraph," which, the State argues, constitutes a punishment recommendation as contemplated by rule 25.2(b)(3). *Id.* The State points to appellant's "Written Waiver and Consent to Stipulation of Testimony, Waiver of Jury, and Plea of Guilty," which recites that there was "no plea agreement in this case except as follows: Cold Plea to Aggravated Sexual Assault of a child." The State also directs our attention to the fact that appellant did not enter a plea to the enhancement paragraph and that the trial judge's admonishment regarding the range of punishment did not reflect any enhancement.

■ Despite these facts, we note that neither the clerk's record nor the court reporter's record reflects any agreement by the State not to adjudicate the count alleging Indecency with a Child in exchange for appellant's guilty plea to Aggravated Sexual Assault of a Child, nor does the record provide evidence that the State agreed to drop the enhancement paragraph in exchange for appellant's guilty plea.[5] Further, the court reporter's record does not reflect that the trial court informed appellant either that it would

follow or that it would reject any plea agreement. *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(2) (Vernon Supp.2002) (requiring the trial judge to inform a plea-bargaining defendant of the court's acceptance or rejection of any plea bargain); *see also Ditto v. State,* 988 S.W.2d 236, 238 (Tex. Crim.App.1999) (interpreting the requirements of article 26.13(a)(2)). In fact, the trial judge stated on the record, "There's no plea bargain here." Defense counsel responded, "No, Your Honor."[6] The trial judge's observation is consistent with our understanding of the term "cold plea" as equivalent to the more familiar term "open plea": appellant entered a guilty plea without any recommendation from the State with regard to punishment.[7]

We cannot divine any agreement by the State—either implicit or explicit—from this record. *See Ex parte Moussazadeh,* 64 S.W.3d 404, 412 (Tex.Crim.App.2001) ("We hold that any finding that parole eligibility formed an essential part of a plea agreement must be founded upon the express terms of the written plea agreement itself, the formal record at the plea hearing, or the written or testimonial evidence submitted by *both* the prosecution and applicant in a habeas proceeding."). We cannot conclude on this record that appellant's plea was the result of an

authorities that was not accepted by the court did not require a particularized notice of appeal under rule 25.2(b)(3)).

5. Courts apply general contract law principles to plea bargain agreements. *Ex parte Moussazadeh,* 64 S.W.3d 404, 411 (Tex.Crim. App.2001). A plea bargain agreement is a bilateral, not unilateral contract. *See Ortiz v. State,* 885 S.W.2d 271, 273 (Tex.App.-Corpus Christi 1994), *aff'd,* 933 S.W.2d 102 (Tex. Crim.App.1996) ("A plea bargain consists of three parts: a plea of guilty, the consideration for it, and the approval by the court of the agreement. The bargain is the consideration exchanged to the defendant for the plea of guilty."). Proof here that the trial court did

not adjudicate one count of the indictment and the enhancement paragraph is not proof that the State agreed to abandon those claims as consideration for appellant's guilty plea to one of the charges. The record is silent as to the reasons for the State's concessions.

6. The prosecutor did not offer any correction to either statement.

7. For an example and discussion of the use of the term "cold plea" in this jurisdiction, see *Colunga v. State,* Nos. 13–97–202–CR, 13–97–203–CR, 13–97–204–CR, 13–97–205–CR, 1997 Tex.App. LEXIS 6534, at *5–*6 (Tex.App.-Corpus Christi December 18, 1997, no pet.) (not designated for publication).

agreed punishment recommendation by the State as contemplated by rule 25.2(b)(3). Thus, we hold that rule 25.2(b)(3) does not apply to appellant's appeal, and his general notice of appeal is sufficient to invoke our jurisdiction. *See Guerrero v. State,* 64 S.W.3d 436, 440 (Tex. App.-Waco 2001, no pet.) (per curiam) (holding that rule 25.2(b)(3) did not apply to an appeal from a guilty plea entered without the benefit of an agreed punishment recommendation).

## RELEVANT FACTS

Appellant's complaints center on a colloquy that occurred during his sentencing hearing when the prosecutors who were arguing the case asserted that penetration had occurred during the charged Aggravated Assault of a Child by contact. In response to questioning by the court, the prosecutors admitted that the State had no doctor's report regarding penetration, arguing that the victim's delayed outcry resulted in the loss of any medical evidence.[8] Appellant cites to the following portion of the record:

[PROSECUTOR NO. 1]: In reference to the aggravated sexual assault, I've reviewed the PSI. It seems like a pretty egregious act. It was his own daughter. She was nine years old at the time. This is not something that—it's nothing light. Seems like there was—he went through the whole act, penetration and all. At this time the state would be asking for 45 years TDC on that cause.

[DEFENSE COUNSEL]: Your Honor, from what I can tell, and I haven't had any evidence brought to the fact that actually there was penetration.

THE COURT: Where is the doctor's report?

[PROSECUTOR NO. 1]: In the PSI, Your Honor, page two it says towards the bottom subsequently he extorted [sic] his penis and attempted to insert it into the girl.

THE COURT: Where is the doctor's report?

[PROSECUTOR NO. 2]: My understanding the little girl—the outcry on this came substantially after the defendant actually had been out of the home when the child felt safe enough to make the outcry. He had already been placed in the Safe P unit and so there wasn't any physical evidence or anything that needed to be preserved or there wasn't any acute injury that needed to go. The little girl needed to go to the doctor for—it's not an option. That evidence is not there because the outcry was delayed.

[DEFENSE COUNSEL]: Well, Your Honor, we're also making an assumption. [Prosecutor No. 1] says there was actually penetration which the act would be committed by just the touching.

[PROSECUTOR NO. 2]: Judge, all the law requires is contact. That's all it requires. And number two, the little girl says it happened, judge.

[DEFENSE COUNSEL]: We're not arguing with that, Your Honor. There is a difference between what he was saying and he was accused of.

THE COURT: Okay. Mr. Ramirez. Based on your plea of guilty and the court having found you guilty, the court is going to sentence you to 35 years Texas Department of Criminal Justice Institutional Division. Any legal reason why sentence should not now be imposed?

---

8. The indictment in this case did not contain any allegation of Aggravated Sexual Assault of a Child by penetration under sections 22.021(a)(1)(B)(i) or (ii) of the penal code. Tex. Pen.Code Ann. §§ 22.021(a)(1)(B)(i), (ii) (Vernon Supp.2002).

THE DEFENDANT: No Your Honor.

## THE VOLUNTARINESS ISSUE

■ We address first appellant's second issue. As a preliminary matter, we must determine if appellant waived any issues when he pled guilty without the benefit of an agreed sentencing recommendation. It once was well established in this state that a defendant who entered a voluntary and understanding plea of guilty or nolo contendere without the benefit of a plea bargain agreement waived any nonjurisdictional errors. *Flowers v. State*, 935 S.W.2d 131, 133 (Tex.Crim.App.1996); *Helms v. State*, 484 S.W.2d 925, 927 (Tex. Crim.App.1972). The court of criminal appeals abrogated the *"Helms* rule" in *Young v. State*, 8 S.W.3d 656, 666–67 (Tex. Crim.App.2000). Waiver by guilty plea now occurs only "when the judgment of guilt was rendered independent of, and is not supported by, the error." *Young*, 8 S.W.3d at 667 (the "Helms/*Young* rule").[9] Appellant contends that his plea was rendered involuntary by changed circumstances between the entry of his guilty plea and the sentencing hearing. Since

appellant asserts an error that occurred "at or after" entry of his plea and also challenges the voluntariness of his plea, the Helms/*Young* rule does not limit our review of appellant's second issue. *Castellano v. State*, 49 S.W.3d 566, 569–570 (Tex. App.-Corpus Christi 2001, pet. ref'd).[10]

Appellant argues that at no time before he entered his guilty plea had the State alleged penetration, and thus he was unaware before he pled guilty that the State would raise the issue of penetration during the sentencing hearing. For the proposition that his plea was involuntary as a result of these changed circumstances, appellant relies on *Thom v. State*, 563 S.W.2d 618 (Tex.Crim.App. [Panel Op.] 1978), and *Escobedo v. State*, 643 S.W.2d 243 (Tex. App.-Austin 1982, no pet.).

*Thom* provides no support for appellant's position. As here, the trial court in *Thom* recessed the sentencing hearing pending a probation report and sentenced the defendant on a later date. *Thom*, 563 S.W.2d at 619. Reciting the maxim that "there is no bifurcated trial at a plea of guilty trial," a panel of court of criminal appeals judges rejected the defendant's argument that he should have been allowed

9. The *Helms* rule did not apply to asserted error "occurring at or after entry of a nonnegotiated guilty plea." *Jack v. State*, 871 S.W.2d 741, 744 (Tex.Crim.App.1994) (per curiam); *see Lemons v. State*, 953 S.W.2d 825, 827 (Tex.App.-Corpus Christi 1997, no pet.) ("A voluntary and understanding guilty plea entered without the benefit of a plea bargain waives all nonjurisdictional defects that occurred *before* the entry of the plea.") (emphasis added); *see also Cooper v. State*, 45 S.W.3d 77, 87 (Tex.Crim.App.2001) (Price, J., dissenting) ("It is true that in *Young v. State*, 8 S.W.3d 656 (Tex.Crim.App.2000), we abrogated the *Helms* rule. However, the restrictive language in *Helms* did not preclude a challenge to the voluntariness of an open guilty plea.... When we abrogated *Helms*, we did not alter the ability of a non-plea bargaining defendant to challenge the voluntariness of his plea.... After *Helms*, and even after

*Young*, a defendant who pleads guilty without the benefit of a plea bargain may challenge the voluntariness of his plea irrespective of the trial court's permission.") (citations omitted).

10. We note that the result would be the same under both the *Helms* rule and its *Young* incarnation. Application of the *Helms* rule was predicated on a guilty plea that was "voluntarily and understandingly made." *Flowers v. State*, 935 S.W.2d 131, 132 (Tex.Crim. App.1996). Similarly, if appellant's plea was involuntary, as he claims, application of *Young* leads to the conclusion that the judgment of guilt could not have been rendered independent of the error. *Castellano v. State*, 49 S.W.3d 566, 569 n. 2 (Tex.App.-Corpus Christi 2001, pet. ref'd).

to call witnesses during the final setting of the recessed sentencing hearing. *Id.* We do not see how *Thom* is relevant to appellant's claim of "changed circumstances."

*Escobedo,* while on point, provides no support to appellant, either. In *Escobedo,* the "changed circumstances" were the trial court's rejection of the original plea bargain agreement on which the defendant's plea had been based. *Escobedo,* 643 S.W.2d at 246. The *Escobedo* court determined that the record did not reflect that the defendant had ever been advised of his right to withdraw his earlier plea because of the trial court's intention to reject the original recommendation on which the plea was based. *Id.* The "changed circumstances" in *Escobedo* struck straight at the heart of the plea-bargaining defendant's rights: "the plea was renegotiated during the sentencing hearing based on changed circumstances and intervening facts under the trial court's consideration." *Id.* at 245. Significantly, the record of the *Escobedo* sentencing hearing reflected "only confusion on appellant's part as to the state of such negotiations during the punishment hearing." *Id.*

▮▮▮ The record here reflects no such confusion on appellant's part. If the record shows that a defendant demonstrated at the plea hearing an understanding of the consequences of the plea, a "heavy burden" is placed on the defendant to later show a lack of voluntariness. *Solomon v. State,* 39 S.W.3d 704, 707 (Tex.App.-Corpus Christi 2001, no pet.). Claims on appeal of an involuntary plea, without supporting confirmation in the record, will not be sufficient for a reviewing court to find a plea involuntary. *See Franklin v. State,* 693 S.W.2d 420, 431 (Tex.Crim.App.1985) (refusing to consider mere assertions in a brief that are unsupported by the record).

▮▮▮ We weigh the totality of the circumstances in determining the voluntariness of a plea, viewed in light of the entire record. *Ybarra v. State,* 960 S.W.2d 742, 745 (Tex.App.-Dallas 1997, no pet.). Unlike the record in *Escobedo,* in this case the court reporter's record of the plea hearing and appellant's representations in his "Written Waiver and Consent to Stipulation of Testimony, Waiver of Jury, and Plea of Guilty" show he understood the charges against him, had consulted with his attorney, and entered his plea freely. Appellant did not seek to withdraw his plea after the prosecutors injected the penetration issue into the sentencing hearing, nor did appellant's general motion for new trial preserve any issue of the voluntariness of his plea. Hence, the trial judge conducted no hearing on the voluntariness issue. Nothing in the record contradicts the statements made by appellant at the plea proceeding and in the written plea papers that he understood the consequences of his guilty plea. The only record before us indicates a voluntary plea. *See Munoz v. State,* 840 S.W.2d 69, 74 (Tex.App.-Corpus Christi 1992, pet. ref'd) (finding no indication of involuntariness on a factually similar record). We overrule appellant's second issue.

## THE MISINFORMATION ISSUE

Having determined that appellant's plea was voluntary, we now address his first issue. Appellant complains that interjection into his sentencing hearing by prosecutors of an unsubstantiated allegation of penetration had two effects: (1) the trial judge imposed a sentence based at least in part on "misinformation of constitutional magnitude" as prohibited by *U.S. v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); [11] and (2) the prosecu-

---

11. Appellant also argues that the United States Supreme Court's condemnation of the

tors did not disclose to appellant before entry of his plea the absence of any medical evidence to support the allegation of penetration, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

### Waiver by Want of Specific Objection and Ruling

Appellant complains within his first issue that in assessing appellant's punishment, the trial judge specifically considered the "extraneous offense" injected into the sentencing hearing by the prosecutors' remarks regarding penetration and therefore imposed a sentence based on misinformation because the State had no evidence of penetration. Appellant's complaint in this regard asserts an error that occurred after the entry of his plea, and as such the Helms/*Young* rule does not apply. *See Jack v. State*, 871 S.W.2d 741, 744 (Tex. Crim.App.1994) (per curiam) (noting that *Helms* rule did not limit appeal of asserted error "occurring at or after entry of a nonnegotiated guilty plea"); *see also Lemons v. State*, 953 S.W.2d 825, 827 (Tex. App.-Corpus Christi 1997, no pet.) (recognizing that "[a] voluntary and understanding guilty plea entered without the benefit of a plea bargain waives all nonjurisdictional defects that occurred *before* the entry of the plea.") (emphasis added).

Appellant contends that the prosecutors' remarks during his sentencing hearing about penetration amounted to the kind of "misinformation of constitutional magnitude" condemned by *Tucker* and require

that his sentence be vacated and remanded. The defendant in *Tucker* had been convicted of armed bank robbery and sentenced to the maximum authorized term. *Tucker*, 404 U.S. at 444, 92 S.Ct. 589. The trial court expressly referred to three previous felony convictions during the defendant's sentencing. *Id.* Two of the convictions were later overturned as constitutionally invalid and void under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Id.* The Court of Appeals for the Ninth Circuit affirmed the trial court's refusal to vacate the conviction, but remanded the case for resentencing. *Id.* at 446, 92 S.Ct. 589. On the government's writ of certiorari, the United States Supreme Court affirmed the remand and held that the case dealt not with a sentence imposed by the informed discretion of a judge, but with a sentence founded in part on "misinformation of constitutional magnitude." *Id.* at 447, 92 S.Ct. 589. The Court held that the defendant's sentence might have been different had the sentencing judge known that two of the defendant's previous convictions were void. *Id.* at 448, 92 S.Ct. 589.

Significantly, Tucker did not object to the trial court's consideration of the convictions in assessing his sentence. *Id.* at 444, 92 S.Ct. 589. This is because the convictions considered by the sentencing court were not overturned until several years after the sentencing hearing in which they were admitted. *Id.* at 444–45, 92 S.Ct. 589.[12]

---

use of convictions obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), to either support guilt or to enhance punishment for another offense applies to compel reversal and remand of his sentence, citing *Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). *Burgett* adds nothing to appellant's argument, however, and so we focus

our analysis on applying the principle of "misinformation of constitutional magnitude" established by *U.S. v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

**12.** It was *Tucker* that established the now-familiar principle that convictions obtained in violation of *Gideon* are not admissible for punishment purposes. As the seminal case then, Tucker's failure to object to the admis-

■ Texas law long has required a contemporaneous objection to the admission of a prior conviction during sentencing, even when the prior conviction was obtained without the defendant having the benefit of counsel. *Ex parte Russell*, 738 S.W.2d 644, 647 (Tex.Crim.App.1987) (op. on reh'g). Thus, a defendant may waive even *Tucker* error of "constitutional magnitude" by failing to timely object, in keeping with the general rule that an appellant may not complain of an error pertaining to sentencing or punishment without objecting or otherwise raising the error in the trial court. *Id.; see Mercado v. State*, 718 S.W.2d 291, 296 (Tex.Crim.App.1986) (stating the general rule); *see also Rogers v. State*, 640 S.W.2d 248, 264–65 (Tex.Crim. App. [Panel Op.] 1982) (op. on second reh'g) (finding waiver of a claim on appeal that the trial court's sentencing procedures violated due process when the appellant did not object to the procedure); *Quintana v. State*, 777 S.W.2d 474, 479 (Tex.App.-Corpus Christi 1989, pet. ref'd) (finding that a failure to object to the sentence imposed by the trial court as cruel and unusual waived the error).

■ The prosecutors' remarks complained of by appellant in this case were subject to objection at the time of appellant's sentencing. *Russell*, 738 S.W.2d at 647. Appellant waived any error in the trial court's consideration of the prosecutors' remarks by not objecting on that basis. *Id.*

■ Further, even if we construe appellant's protest at the sentencing hearing that the prosecutors' remarks about penetration were inconsistent with the charged offense as an objection to the trial judge's consideration of the remarks in assessing appellant's sentence, appellant did not pursue any ruling from the trial judge. To preserve an error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection if they are not apparent from the context, and obtain an implicit or explicit ruling or the court's refusal to rule. Tex.R.App. P. 33.1; *see Flores v. State*, 871 S.W.2d 714, 723 (Tex. Crim.App.1993) ("Although the judge did not give a clear instruction to disregard [the prosecutor's comments] and did not rule on appellant's motion for a mistrial, appellant, apparently being satisfied, did not pursue his objection in order to obtain an adverse ruling. Where an adverse ruling is not obtained, nothing is preserved for review."). Thus, we hold that appellant waived his complaint by not stating with specificity the grounds for any objection regarding the court's consideration of the prosecutors' remarks about penetration and by failing to pursue either a ruling from the trial judge or the trial judge's refusal to rule.[13] Tex.R.App. P. 33.1; *Flores*, 871 S.W.2d at 723.

### Waiver by Guilty Plea

Appellant also complains that prosecutors did not produce exculpatory informa-

---

sion of the prior convictions did not waive the error. *Ex parte Flores*, 537 S.W.2d 458, 459 n. 2 (Tex.Crim.App.1976).

**13.** Even if appellant had preserved the issue, the prosecutors acknowledged to the trial judge that the State had no medical evidence of penetration. Contrary to appellant's assertion in his brief, the court reporter's record does not reflect that the trial judge stated on the record that he considered the prosecutors' remarks about penetration in sentencing appellant. Unlike the sentencing judge's express consideration of the void convictions in *Tucker*, we cannot conclude that the judge considered the remarks as evidence of penetration, much less that the remarks constituted "misinformation of constitutional magnitude." *U.S. v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

tion to the defense, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), before entry of appellant's guilty plea. The information appellant claims the State wrongfully withheld was that which the prosecutors discussed during the sentencing hearing, that is, that the State had no medical evidence of penetration. Appellant claims he learned of the alleged *Brady* violation only *after* his plea, during the sentencing hearing. Nonetheless, the focus of his assertion is that the violation itself occurred when the prosecutors did not disclose to him *before* his plea that the State had no medical evidence of penetration. We conclude that the *Helms*/Young rule applies to our review of appellant's claimed *Brady* violation. *Jacobs v. State*, 80 S.W.3d 631, 632 (Tex.App.-Tyler 2002, no pet. h.). Therefore, we must determine if here "the judgment of guilt was rendered independent of, and is not supported by, the error." *Young*, 8 S.W.3d at 667; *Jacobs*, 80 S.W.3d at 632. That is, we analyze if the alleged *Brady* error has a "direct nexus" with the guilt or innocence of appellant. *See Brink v. State*, 78 S.W.3d 478, 484 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (applying *Young* to claimed error in substitution of counsel).

The *Young* court held that the judgment in that case was not rendered independent of the alleged error in the trial court's denial of Young's motion to suppress. *Young*, 8 S.W.3d at 667. Other courts also have concluded that where error is predicated on the denial of a motion to suppress, the judgment is not independent of the alleged error. *See, e.g., Guerrero*, 64 S.W.3d at 440 (applying *Young* to hold that the judgment was not independent of the denial of a motion to suppress an allegedly involuntary confession). However, unlike a motion to suppress, which necessarily goes directly to the issue of proof of the defendant's guilt, allegedly withheld exculpatory material may or may not have a direct nexus with the defendant's guilt or innocence. *Jacobs*, 80 S.W.3d at 632. Here, the absence of medical proof of penetration has no nexus with appellant's guilt or innocence of the offense of conviction, which was Aggravated Sexual Assault of a Child by contact, not by penetration. Accordingly, we find that appellant, by his plea of guilty without an agreed punishment recommendation, waived his claim of a *Brady* violation in the prosecutors' failure to disclose before appellant's plea that the State had no medical evidence of penetration.[14] *Id.*

14. The result is the same even if we conclude that the substance of appellant's complaint originated after his plea and renders the *Helms*/Young rule inapplicable. We find no error in the State's failure to disclose to appellant the absence of any medical proof of penetration. Certainly, a prosecutor has the affirmative duty to disclose all material evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Failure to do so results in a violation of the due process clause of the Fourteenth Amendment. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. We apply a three-part test to determine if a prosecutor's actions violated due process. We inquire whether: (1) the prosecutor failed to disclose evidence; (2) the evidence is favorable to the accused; and (3)

the evidence is material, meaning a reasonable probability exists, had the evidence been disclosed to the defense, that "the result of the proceeding would have been different." *Little v. State*, 991 S.W.2d 864, 866 (Tex.Crim. App.1999). As we stated in our waiver analysis regarding the lack of a nexus between the undisclosed information and appellant's guilt of the offense for which he was convicted, disclosure of the fact that the State had no medical evidence of penetration, in all reasonable probability, would not have caused the outcome of this case to be different. The State did not allege nor did it seek to prove penetration. In his voluntary written statement, appellant himself denied penetration. In sum, we do not find that the complained-of failure by the State to disclose that it had no

## CONCLUSION

Having found that appellant waived his first issue and having overruled the second, we affirm the judgment and sentence of the trial court.

medical evidence of penetration was material for *Brady* purposes.