NUMBERS
13-03-062-CR

 

                         COURT OF
APPEALS                   

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS CHRISTI
- EDINBURG

 

 

 

                                             

ANGEL ROGELIO MATUL,                                          Appellant,

 

                                           v.

 

THE STATE OF TEXAS,                                              Appellee.

 

 

 

                  On appeal from
the 185th District Court

                            of Harris County, Texas.

 

 

 

                     MEMORANDUM
OPINION[1]

 

              Before Justices
Rodriguez, Castillo, and Garza

                  Memorandum
Opinion by Justice Castillo

 








Appellant
Angel Rogelio Matul asserts that his plea of guilty to the offense of
aggravated robbery[2]
was coerced.  By four issues, Matul
argues (1) his guilty plea was involuntary, (2) counsel was ineffective, and
(3) the trial court should have allowed him to withdraw his guilty plea and (4)
should have granted a new trial.  The
trial court has certified that this is not a plea bargain case, and Matul has
the right of appeal.  See Tex. R. App. P. 25.2.  We affirm.

I.  Background

Court
documents dated September 30, 2002, show that (1) the State, without an agreed
sentencing recommendation ("WOAR"), agreed to a cap on punishment at
twenty-five years' confinement in the Texas Department of Criminal Justice; (2)
Matul judicially confessed to committing aggravated robbery on or about March
4, 2001; (3) Matul acknowledged in writing his understanding of the proceedings
against him and the consequences of his plea of guilty; and (4) Matul applied
for probation.[3]  On September 30, 2002, Matul appeared before
the trial court to enter a plea of guilty to the offense of aggravated
robbery.  At the plea hearing, the
following colloquy between the trial court and Matul ensued:

Q: 
Mr. Matul, you're before the Court charged with the felony offense of
aggravated robbery.  How do you plead,
sir, to that offense?

 

A: 
Guilty.

 








Q: 
Are you pleading guilty freely and voluntarily?

 

A: 
That's the only way I got.

 

Q: 
Are you doing this freely and voluntarily?

 

A: 
Yes.

 

Q: 
Anybody threaten you in any way to get you to plead guilty?

 

A: 
Guilty.  I'm guilty.

 

Q: 
Did anybody make you any promise at all to get you to plead guilty?

 

A: 
No, nobody. . . . 

 

Q:  The Court finds that Mr. Matul is competent,
that his plea is freely and voluntarily made and I will accept his plea of
guilty. 

The trial court asked:

Q: 
Now Mr. Matul, I understand that we're going to reset this case until
one day next week. . . .  for you to
bring witnesses so we can have a punishment hearing and bring any witnesses you
want or have them write the Court a letter and I'll be sure to read that, okay?  

 

A:  Thank you.








On
October 10, 2002, Matul filed a motion to withdraw his guilty plea, asserting
as grounds that the plea was "not true . . . and made/entered at a time
when [he] was confused, under pressure, in fear of losing his freedom, and not
thinking correctly."  On the same
day, the trial court convened a hearing on the motion to withdraw his guilty
plea.  Trial counsel argued that Matul
wished to withdraw his plea because "he was unclear about what he was
doing, he was under pressure, he was scared. 
He had no idea. . . .  [U]nder
oath he's stating now that plea is untrue. 
He's not guilty."  The trial
court denied the motion, and the punishment hearing ensued.[4]  During the hearing, Matul adduced evidence to
support his claim of innocence and the involuntariness of his guilty plea.  The State countered with evidence to sustain
the guilty plea and evidence on punishment, including evidence of an extraneous
aggravated robbery offense.  The trial
court admitted in evidence two security camera videotapes of the scene,
recorded on the date of the offense and on the extraneous offense date.

Matul's
wife, Teresa Elias, testified that the man on the videotape was not Matul.  Eloy Salgado, an inmate, testified he robbed
Grocery Services alone.  Richard Latter
testified that Matul worked as an independent contractor for his moving company,
and that Matul was not the person shown on the videotape.[5]  

          Matul
testified that he "felt pressured" and "didn=t know what to do" when he admitted
guilt during the plea hearing.  He denied
he committed the offense and stated, "Well, I=m innocent.  But if they find me guilty for any reason,
give me the opportunity for probation . . . ."  He further testified that he wanted to go to
trial on the date he entered his plea. 
On cross-examination, Matul testified that, after speaking








with the State's
witnesses on the morning set for the jury trial, his trial counsel told him
that he had no chance of winning and would be sentenced to ninety-nine years in
prison.  At the time, he told his trial
counsel that even if the State had fifty witnesses he wanted a trial.  Matul admitted that trial counsel explained
the plea documents to him.  The prosecutor
continued cross-examination as follows:

Q: 
Did anyone force you to sign the paper? 
Yes or no?

 

A: 
Yes.

 

Q: 
Who forced you?

 

A: 
What the lawyer told me . . . .

.

Q: 
And now that the jury is gone and the witnesses are gone, now you're
trying to convince the Court that you didn't do it?

 

A: 
Well, yes.  Because my conscience
doesn't permit me. . . .

 

Q: 
No one drove your truck on September 1st but you, did they?

 

A: 
Nobody drives my truck.  

 

Q: 
So, on March 4th, when other witnesses saw your truck, no one could be
driving that but you, correct?[6]

 

A: 
Of course.  It would have to be
me.

 

The trial court
assessed punishment at fifteen years in the Institutional Division of the Texas
Department of Criminal Justice.  When
asked if he had anything to say before pronouncement of sentence, Matul
proclaimed his innocence.  








Matul filed a motion for new trial
asserting as grounds that (1) his plea was involuntary, (2) he believed he
could appeal "the plea bargain," and (3) he was coerced into pleading
guilty by his counsel's statement that he could not prevail at trial.  The trial court convened a hearing on Matul's
motion.  

Matul's trial counsel testified that on
the date of the jury trial, September 30, 2002, he extensively discussed a plea
agreement with Matul.[7]  Trial counsel testified that he reviewed the
plea documents with Matul.  Trial counsel
conveyed to Matul the strength of the State's case, as he believed was his
obligation.  Trial counsel testified that
Matul had earlier rejected the State's offer of fifteen years in prison but the
offer remained viable for months.  On the
date of trial, Matul again rejected the fifteen-year offer, preferring
probation, an offer the State did not make. 
Trial counsel further testified that Matul received advice from fellow
inmates, and he understood his client's confusion because Matul "was
listening to two people here, his cell mates and [trial counsel]."  Matul told counsel he would appeal if the
trial court denied him probation, and that he would do so "regardless of
what happened."  Trial counsel
explained that Matul was "very well entrenched with the idea, from talking
with his fellow cell mates, that he could appeal, regardless of whatever
happened." 








          Matul testified that he pleaded guilty
because he believed he could appeal if he was not granted probation.  He testified that trial counsel advised him
he could not appeal if he proceeded with a jury trial.  Prior to September 30, 2002, he did not plead
guilty because he alleged he was innocent. 
On that date, his trial counsel denied him time to "think
about" pleading guilty because the jury was ready.  Matul denied he authorized his trial counsel
to negotiate a plea.  He admitted he
initialed statutory admonishments in the plea documents and that trial counsel
explained them to him.  Matul stated,
"He was explaining to me fast.  I
was just putting down initials.  I wasn't
really paying any attention.  I wasn't
thinking right."  The following
colloquy ensued between the prosecutor and Matul:

Q: So, you knew right here that you could
get as little as 5 or as much as 99 for a first degree felony. 

 

A: Of course. . . .  I said yes because this is the only road I
had to get . . . probation.  I had no
other alternative.

 

Q: So, sir, you'd agree with me that I
never promised you probation.

 

A: You didn't, but the attorney did.  Well, he didn't promise me anything but B

 

Q: And the Judge never indicated what she
was going to do on punishment.

 

A: No.

 

Q: And Mr. Ruiz never told you that if you
plead guilty the Judge would give you probation.  Is that true or not true?

 

A: Yes.

 

After the evidentiary hearing, the trial
court denied the motion.  This appeal
ensued.

II. 
Voluntary Plea








In his first issue, Matul argues his plea
was involuntary because he did not adequately understand important rights and
consequences of the agreement his trial counsel made with the State.  In particular, Matul asserts that he could
not have made an intelligent or voluntary decision because his plea was based
on inaccurate advice from his trial counsel including that (1) he had the right
to appeal his sentence, and (2) he would not be eligible for probation if he
proceeded to a jury trial.  

A. 
Standard of Review

We consider the totality of the
circumstances in determining the voluntariness of a plea, viewed in the light
of the entire record.  Ybarra v. State,
960 S.W.2d 742, 745 (Tex. App.BDallas 1997, no pet.).  Once a defendant has pled guilty and attested
to the voluntary nature of his plea, he bears a heavy burden at a subsequent
hearing to demonstrate a lack of voluntariness.  Garcia v. State, 877 S.W.2d 809, 812 (Tex.
App.BCorpus Christi 1994, pet. ref=d). The burden of demonstrating the
involuntariness of the plea falls on appellant. 
Id. 

B. 
Jurisdiction








The State argues that this Court does not
have jurisdiction because this is a plea bargain case and Matul did not meet
the requirements of rule 25.2(a)(2) of the Texas Rules of Appellate
Procedure.  See Tex. R. App. P. 25.2(a)(2).  The two basic kinds of plea‑bargaining
are charge‑bargaining and sentence‑bargaining.  See Shankle v. State, 119 S.W.3d 808,
813 (Tex. Crim. App. 2003) (en banc). 
Charge‑bargaining involves questions as to whether a defendant
will plead guilty to the offense that has been alleged or to a lesser or
related offense, and whether the prosecutor will dismiss, or refrain from
bringing, other charges.  Id.  Sentence‑bargaining may be for binding
or non‑binding recommendations to the court on sentences, including a
recommended "cap" on sentencing and a recommendation for deferred‑adjudication
probation.  Id.  There can be other kinds of plea bargains
that include other considerations, but they are far fewer in number.  See id.  








In this case, the trial court, without
objection, treated the plea consistent with proceedings in a non-plea bargain
case.  Matul testified that he agreed to
enter a plea of guilty with the prospect that the trial court would order
probation as punishment.  The record
contains his application for probation. 
He requested probation when he testified during the punishment hearing.  He requested probation again when he
testified during the motion for new trial hearing.  During the motion for new trial proceedings,
the prosecutor asserted that the State made no promise of probation.  The trial court's observation during the same
hearing is consistent with our understanding of the term "open
plea:"  Matul entered a guilty plea
without any recommendation from the State with regard to punishment.  See Ramirez v. State, 89 S.W.3d
222, 226 (Tex. App.BCorpus Christi 2002, no pet.).  On this record, we conclude that Matul
entered a plea of guilty without the benefit of an agreed punishment
recommendation.[8]  Id.; see Perez v. State, 129
S.W.3d 282, 286 (Tex. App.BCorpus Christi 2004, no pet.); Dorsey
v. State, 55 S.W.3d 227, 234 (Tex. App.BCorpus
Christi 2001, no pet.).  Thus, Tex. R. App. P. 25.2 does not apply and
we have jurisdiction over this appeal to review the voluntariness of Matul's
plea.  See Dears v. State, 154
S.W.3d 610, 613 (Tex. Crim. App. 2005); Young v. State, 8 S.W.3d 656, 666‑67
(Tex. Crim. App. 2000) (en banc).  

C. 
Discussion

When the record shows that the trial court
gave an admonishment, there is a prima facie showing of a knowing and voluntary
plea of guilty.  Ex parte Gibauitch,
688 S.W.2d 868, 871 (Tex. Crim. App. 1985) (per curiam); Dorsey, 55
S.W.3d at 235.  The burden then shifts to
the defendant to show that he pleaded guilty without understanding the
consequences of his plea and, consequently, suffered harm.  See Tex.
Code Crim. Proc. Ann. art. 26.13(c) (Vernon1989); Ybarra v. State,
93 S.W.3d 922, 925 (Tex. App.BCorpus Christi 2002, no pet.); Dorsey,
55 S.W.3d at 235.  In reviewing the
voluntariness of a defendant's guilty plea, we examine the record as a whole.  Dorsey, 55 S.W.3d at 235.








Written admonishments were given to Matul,
see Tex. Code Crim. Proc. Ann.
art. 26.13(d) (Vernon 1989), and they were signed by both Matul and his trial
counsel.  The admonishments state:  (1) Matul understands the admonishments and
the consequences of his plea, see id.; and (2) the admonishments,
waivers, stipulations, and judicial confession were "read to me and
explained to me in [Spanish] by my attorney and/or an interpreter, namely [trial
counsel], before I signed them, and I consulted fully with my attorney before
entering this plea."  Matul
testified that his trial counsel interpreted the admonishments for him.   Further, 
during the plea hearing, he testified that he understood the charges
against him and was entering his plea freely and voluntarily. 

The record before us indicates a voluntary
plea, and we find nothing which satisfies Matul's "heavy burden" to
demonstrate that his plea was involuntary. 
Matul's signature on the written admonishments constitutes his
representation that his plea was made freely and voluntarily.  He orally affirmed to the trial court that no
one forced or coerced him into making the plea. 
His written and oral statements demonstrate that he understood the
charges against him, had consulted with his counsel, and was entering his plea
without threat or promise in exchange for that plea.  There is nothing in the record to contradict
these statements.  We conclude that Matul
has not met his burden to show that he pleaded guilty without understanding the
consequences of his plea and, consequently, suffered harm.  See id. at art. 26.13(c) (Vernon
1989).  Accordingly, we overrule the
first issue presented.

III. 
Effective Assistance of Counsel

In his second issue, Matul argues that his
trial counsel was ineffective because he did not properly admonish Matul of the
important consequences of his plea.  The
State counters that Matul's trial counsel fulfilled any legal duty owed to his
client.  








The standard for reviewing claims of
ineffective assistance of counsel is set forth in Strickland v. Washington,
466 U.S. 668, 687 (1984).  If a guilty
plea is entered on the advice of counsel, that counsel must be competent and
render effective assistance.  Hill v.
Lockhart, 474 U.S. 52, 57 (1985); Ex parte Evans, 690 S.W.2d 274,
276 (Tex. Crim. App. 1985) (en banc); Gomez v. State, 921 S.W.2d 329,
332 (Tex. App.BCorpus Christi 1996, no pet.).  When a defendant challenges the voluntariness
of a plea entered on the advice of counsel, contending that his counsel was
ineffective, "the voluntariness of the plea depends on (1) whether
counsel's advice was within the range of competence demanded of attorneys in
criminal cases and, if not, (2) whether there is a reasonable probability that,
but for counsel's errors, he would not have pleaded guilty and would have
insisted on going to trial."  Ex
parte Moody, 991 S.W.2d 856, 857‑58 (Tex. Crim. App. 1999); see
also Strickland, 466 U.S. at 687.  A
defendant's election to plead guilty, when based upon erroneous advice of
counsel, is not done voluntarily and knowingly. 
Ex parte Battle, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991) (en
banc). 








The two complaints Matul claims made his
plea involuntaryBtrial counsel's statements that he could
appeal the sentence and that probation was unavailable by jury trialBdo not render his plea involuntary.  Matul's hopes centered on probation, an
option which a jury had the power to grant. 
See Tex. Code Crim. Proc.
Ann. art. 42.12 _' 3g, 4 (Vernon Supp. 2004-05).  His trial counsel testified that Matul received
advice from fellow cell mates and he could understand Matul's confusion after
he entered his guilty plea.  As already
established, trial counsel explained the written admonishments to Matul.  Prior to Matul's guilty plea, trial counsel
met with the State's witnesses and communicated the strength of the State's
case to Matul.  Trial counsel
communicated the range of punishment applicable to the charged offense.  Matul admitted he understood the range of
punishment.  Moreover, Matul appealed.

There is nothing in the record to
demonstrate that Matul was misled or harmed, even if the advice of which he
complains could be considered inaccurate. 
The record reflects that Matul admitted that trial counsel did not tell him
he would receive probation and that the trial court did not indicate what it
would do at punishment.  That the trial
court did not grant Matul the punishment he sought does not render his plea
involuntary.  See Tovar-Torres v.
State, 860 S.W.2d 176, 178 (Tex. App.BDallas 1993, no pet.) (per curiam) (plea
is not rendered involuntary simply because a defendant receives a greater
punishment than he anticipated).  

We conclude that (1) trial counsel's
advice was within the range of expected competence, and (2) the record does not
establish a reasonable probability that, but for the advice of counsel, Matul
would have pleaded not guilty and demanded a trial.  See Ex parte Moody, 991 S.W.2d at
857‑58; see also Strickland, 466 U.S. at 687.  Accordingly, we conclude that Matul has not
met his burden to show trial counsel was ineffective.  We overrule his second issue.      

IV. 
Withdrawal of Guilty Plea








In his third issue, Matul argues that the
trial court abused its discretion by denying his motion to withdraw his guilty
plea.  We have already concluded that
Matul entered an open plea.  See Perez,
129 S.W.3d at 286; Ramirez, 89 S.W.3d at 226; Dorsey, 55 S.W.3d
at 234.  Matul admitted his guilt at the
plea proceeding.  The grounds asserted in
support of his motion to withdraw the plea were essentially that he was
pressured and afraid.  Viewing the record
as a whole, we conclude that the trial court did not abuse its discretion by
denying Matul's request to withdraw his guilty plea.  See Dorsey, 55 S.W.3d at 234.  We
overrule the third issue presented. 

V. 
Motion for New Trial

In his fourth issue, Matul argues that the
trial court abused its discretion by denying his motion for new trial because
his plea was involuntary, his trial counsel was ineffective, and he was
innocent.  The State responds Matul
waived error by his guilty plea, or, alternatively, the trial court properly
denied the motion for new trial.

On a motion for new trial, the trial court
is the sole judge of the credibility of the witnesses, and we may not
substitute our judgment for that of the trial court.  Salazar v. State, 38 S.W.3d 141, 148
(Tex. Crim. App. 2001).  We will not
overturn a trial court's decision on a motion for new trial unless there is an
abuse of discretion.  Id.  A trial court does not abuse its discretion
in denying a motion for new trial in the face of conflicting evidence.  Salazar, 38 S.W.3d at 148. 








We have already concluded that no
meritorious grounds are indicated by the record as to Matul's claim of an
involuntary plea, including his claim for ineffective assistance of
counsel.  Regarding Matul's claim of
innocence, the trial court heard him testify three timesBat the plea hearing, during the punishment
hearing, and during the motion for new trial. 
During the latter two, Matul proclaimed his innocence.  The trial court, however, had already heard
his admission of guilt under oath.  The
trial court was free to disbelieve Matul's innocence claim.  On this record, we cannot conclude that the
trial court abused its discretion by denying the motion for new trial.  Accordingly, we overrule the fourth issue
presented.  

VI. 
Conclusion

Having overruled Matul's issues, we
affirm.  

 

 

ERRLINDA CASTILLO

Justice

Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and filed

this 16th day of June, 2005.   

 

 

 

 

 

 

 











[1] See Tex.
R. App. P. 47.4.  





[2] See Tex.
Pen. Code Ann. _29.03 (Vernon 2003).  





[3] For ease of reference, we refer to community
supervision as "probation."  See
Tex. Code Crim. Proc. Ann. art.
42.12 (Vernon Supp. 2004‑05).  





[4] An interpreter translated the proceedings.  In some instances, Matul spoke in English; at
one point, he stated he understood English. 
When asked if he understood enough "to be comfortable with legal
documents in English," Matul responded, "Well, yes, I can understand
them.  If I read them slow, I can
understand them."  He was
represented by Spanish-speaking trial counsel.





[5] Latter testified he would risk his business on Matul
because he was an honest man.  He further
testified that Matul was nervous around Latter's guns.  





[6] Matul pleaded guilty to the indictment which alleged
he committed aggravated robbery onor about March 4, 2001.  The indictment alleging he committed
aggravated robbery on or about September 4, 2001, was dismissed.





[7] Addressing Matul's new counsel, the trial court
stated, "you need to understand this wasnot a plea bargain.  This was a plea to a punishment hearing. . .
.  But it wasn't a plea bargain in the
true sense of the word. . . .  It was a
plea of guilty to the Court. . . .  I
wanted the record to be clear it wasn't a plea bargain where he accepted a
certain number of years."  





[8] Even if the parties entered into a plea agreement,
Matul's appeal would be barred.  See Tex. R. App. P. 25.2.