In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00326-CR
_____

STEVIE BLASCHKE HANKE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. 12-13994

**MEMORANDUM OPINION**

A jury found Stevie Blaschke Hanke (Hanke), Appellant, guilty of

aggravated sexual assault of L.J., a nine-year-old girl.[1] *See* Tex. Penal Code Ann. §

22.021 (West Supp. 2014). The trial court sentenced Hanke to fifty years in prison.

In Hanke's first two issues, he argues that the trial court abused its discretion in

---

[1] We identify the victim by using initials that disguise her identity. *See* Tex.
Const. art. 1, § 30(a)(2) (granting crime victims the "right to be treated with
fairness and with respect for the victim's dignity and privacy throughout the
criminal justice process").

1

admitting certain evidence. In his third issue, Hanke contends the trial court erred in assessing punishment because the court punished Hanke for exercising his right to a jury trial in violation of his state and federal constitutional rights. We overrule his issues and affirm the trial court's judgment.

UNDERLYING FACTS

R.C.[2], L.J.'s mother, testified that she and Hanke had been "going out for eight years[]" and that they lived together. On the evening of March 2, 2012, R.C., her two sons, and R.C.'s mother went grocery shopping. R.C. left her two daughters, a nineteen-month-old and her nine-year-old daughter, L.J., with Hanke. R.C. and her mother stopped at a couple of stores and then took the groceries to her mother's house. R.C. asked a friend to give R.C. a ride home. R.C. left the boys with R.C.'s mother, and R.C.'s friend drove R.C. home. Once home, R.C. went inside to see if Hanke would help her bring in the groceries. R.C. could not find Hanke in the living room but heard water running in the bathroom. No one was in the bathroom where the water was running, and the door to the master bedroom was closed so R.C. opened the bedroom door. R.C. testified that she saw both of her daughters naked. According to R.C., L.J. was on the bed with her legs apart and Hanke had his shorts pulled down and Hanke was "moving back and forth

_____

[2] Throughout the reporter's record L.J.'s mother is referenced with her full name. For purposes of this opinion we will reference her as "R.C."

2

between [L.J's] legs while her legs were spread open." R.C. testified that it appeared to her that Hanke's sexual organ was in contact with L.J.'s sexual organ. R.C. testified that she asked Hanke what he was doing and he said he thought R.C. did not love him anymore. R.C. told L.J. to get dressed and R.C. took L.J.'s sister to R.C.'s friend's car. R.C. told Hanke that she "couldn't believe he turned out to be a pedophile child rapist." According to R.C., when she left Hanke was sitting on the couch shaking his head, and R.C. told him she was going to call the police. R.C. went to her mother's house. R.C. testified that she walked into her mother's house crying, told her mother what happened, and then called the police. Officer Spears and Officer Andrew responded to the call about fifteen minutes later.

According to R.C., the first adults L.J. talked to regarding what had happened were R.C. and Officer Spears, and L.J. told them that night what had happened. R.C. testified that L.J. told them that Hanke made L.J. lie down on the bed and he "got between her legs and put[] his private part on her private part moving it back and forth." According to R.C., what L.J. described was consistent with what R.C. had witnessed.

L.J., eleven years old at the time of trial, testified that she had known Hanke most of her life and that he was her "mama's boyfriend or something." She testified that on a night in March 2012, she was at home with Hanke and her little

3

sister, her brothers had gone to her grandmother's house, and her mother had gone to the store. She explained that she was getting ready to take a bath and was undressed with her sister in one of the bedrooms when Hanke walked into the room. According to L.J., Hanke did not have any pants or underwear on and he touched her private part between her legs with his private part and was "rubbing his private part against [hers.]" L.J. testified that Hanke also touched her with his mouth between her legs. L.J. explained that R.C. took L.J. and her sister to the car, and they all went to her grandmother's house. L.J. told her mother what had happened and also reported the incident to a policeman that night.

B.G., a sexual assault nurse examiner (SANE) and registered forensic nurse specializing in sexual assault examinations employed by Child Abuse and Forensic Services, testified that during the course of her duties as a SANE she examines people who have been raped or sexually abused. On March 2, 2012, B.G. examined L.J., and L.J. told her that L.J. was "fixing to take her bath, she and her sister, and [Hanke] . . . asked her, you know, what she wanted him to buy her at the store and then she had her clothes off and she took the diaper off of her sister and she was laying on the bed and she told me that [Hanke] parted her legs and put his mouth down there and then he took his -- his private and rubbed it on her." B.G. testified that L.J. told B.G. it was "embarrassing" and that it hurt. L.J. told B.G.

4

that L.J.'s mother had walked in and witnessed what Hanke was doing and then Hanke stopped. B.G. explained at trial that during the examination she had noted redness on both sides of L.J.'s vaginal opening which would be consistent with somebody rubbing up against L.J.

K.S., a friend of both R.C. and Hanke, testified that she had known Hanke for twenty-five years, and that on the morning of March 3, 2012, Hanke called her and asked her to come pick him up. K.S. sent her boyfriend to get Hanke. According to K.S., Hanke lived with K.S. and K.S.'s boyfriend for a while after the incident. K.S. testified that Hanke cried every day for several days and told her he had ruined his life and lost his family, but did not tell K.S. what had happened. K.S. testified that one day she asked Hanke if he had "touched the children[,]" and Hanke "just lowered his head and he started crying[.]"According to K.S., Hanke told her that he did not remember everything clearly, that he had been drinking beer and "smoking hydro[,]" which K.S. explained at trial was a very strong marijuana, that Hanke said he remembered R.C. "going to go make groceries," and that L.J. and the nineteen month old were taking a bath. Hanke told K.S. that the next thing he remembered he was rubbing his penis between L.J.'s legs. K.S. also testified that Hanke admitted to her that he had oral sex with L.J. According to

5

K.S., Hanke told her that he knew it was wrong and he was planning on getting money for an attorney, and then he would turn himself in to the authorities.

Officer Spears (Spears) with the Beaumont Police Department testified that on March 2, 2012, he and Officer Andrew were dispatched to a residence to investigate a call from a mother who stated she came home to find her child being assaulted by her husband. When the officers arrived at L.J.'s grandmother's residence, L.J. was crying and appeared "really upset." Spears testified that L.J. made statements about being sexually abused. Spears testified that R.C. was present while L.J. was making the statements. To his knowledge, he and R.C. were the first people L.J. told about the assault in any detail. According to Spears, L.J. said that Hanke, whom she referred to as her father, ran her bath water, and while the water was running, L.J. and her sister were lying on the bed. She said that her father came back to lie down with them and they were "play fighting." L.J. told Spears that her father bit her on the leg, then undressed her, forced her legs apart and "messed" with her. Spears explained at trial that he understood her to mean that she had been assaulted, that her behavior and demeanor were consistent with an individual who had been sexually assaulted, and that he believed her outcry. Spears testified that they notified their police sergeant, who notified a detective, Child Protective Services, and B.G. Spears testified that L.J.'s grandmother

6

transported R.C. and L.J. to the hospital for B.G. to examine L.J., and the officers stayed at the hospital until the examination was complete.

CPS Special Investigator Collins (Collins) testified that he interviewed Hanke on May 22, 2012, while Hanke was incarcerated. Collins explained that he followed CPS policies and procedures when conducting his investigation, and that he was not required to give Hanke *Miranda* warnings because Collins was there to conduct a civil investigation. According to Collins, Hanke voluntarily agreed to speak with him about the case. Collins said that Hanke admitted to Collins that Hanke put his mouth on L.J.'s vagina and that he was getting ready to have intercourse with her when L.J.'s mother walked in and caught him.

Detective Duchamp (Duchamp) with the Beaumont Police Department testified that he went to B.G.'s office on March 2, 2012, to meet with the officers to gather information about the incident. Duchamp said he was advised that R.C. had witnessed the incident, and that R.C. went to the police station where she provided Duchamp with a sworn statement. According to Duchamp, L.J. was also interviewed at the Garth House, a child advocacy center, on March 7, 2012, and he said that L.J.'s statement from that interview was consistent with the outcry L.J. made to Officer Spears the night of the incident. Detective Duchamp said he submitted the case to the district attorney's office and requested a warrant be

7

issued for Hanke's arrest. Duchamp explained that no DNA was found from the rape kit testing, but that it was not unusual for there not to be DNA for offenses of a similar nature to this one.

The jury found Hanke guilty of aggravated assault of a child. Hanke elected to have the trial court assess punishment. After a punishment hearing, the trial court sentenced Hanke to fifty years of confinement. Hanke appealed.

ISSUES ON APPEAL

In Hanke's first issue, he argues the trial court abused its discretion in admitting hearsay testimony regarding out-of-court statements purportedly made by L.J. to B.G. (the SANE) and out-of-court statements purportedly made by L.J. to Officer Spears and to R.C,, arguing that the trial court improperly determined that such statements were "outcry statements." In his second issue, Hanke contends the trial court abused its discretion in admitting "irrelevant, prejudicial testimony of K.S." and allowing K.S. to testify "in a manner that sought to have the jury penalize Hanke for exercising his constitutional right to a jury trial and tainted the jury verdict." In his third issue, he contends that, in assessing punishment, the trial court punished Hanke for exercising his right to a jury trial in violation of his state and federal constitutional rights.

L.J.'s STATEMENTS TO R.C., OFFICER SPEARS, AND B.G.

In his first issue, Hanke challenges the admissibility of testimony regarding out-of-court statements purportedly made by L.J. to R.C., Officer Spears, and B.G. We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). We will not reverse a ruling as long as it falls "within the 'zone of reasonable disagreement.'" *Id.* at 102 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

Hanke argues that Officer Spears's and R.C.'s testimony regarding L.J.'s outcry was inadmissible because the trial court failed to conduct a hearing outside the presence of the jury or make a finding on the record that the statements were reliable under article 38.072 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2014). Article 38.072 provides a statutory exception to the hearsay rule for outcry statements made by a child victim of a sexual offense so long as that statement is a description of the offense and is offered into evidence by the first adult complainant told of the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2; *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). Outcry testimony admitted in compliance with article 38.072 is considered substantive evidence, admissible for the truth of the matter

asserted in the testimony. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); *Duran v. State*, 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.).

Article 38.072 applies to statements made by the sexual abuse victim that describe the alleged offense. *Garcia v. State*, 792 S.W.2d 88, 90-91 (Tex. Crim. App. 1990). A statement that meets the requirements of subsection (a) of article 38.072 is not inadmissible because of the hearsay rule if, on or before the fourteenth day before the proceeding begins, the State notifies the defendant of its intention to offer the outcry statement, provides the defendant with the name of the witness through whom it wishes to offer the statement, and provides the defendant with "a written summary of the statement." Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b); *Sanchez*, 354 S.W.3d at 484 ("The State must provide a summary of the outcry statement that will be offered into evidence."). Section 2(b) of article 38.072 also requires the trial court to conduct a hearing outside the presence of the jury to determine that the outcry statement is reliable based on time, content, and circumstances of the statement. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2). Article 38.072's notice and hearing requirements are mandatory and must be complied with in order for an outcry statement to be admissible over a hearsay objection. *See Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990).

10

The erroneous admission of outcry testimony in violation of Article 38.072 is a non-constitutional error. *See* Tex. R. App. P. 44.2(b); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Pursuant to Texas Rule of Appellate Procedure 44.2(b), a non-constitutional error must be disregarded unless it affected the defendant's substantial rights, i.e., the error had a substantial and injurious effect or influence in determining the jury's verdict. Tex. R. App. P. 44.2(b); *see Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). This Court will not overturn a criminal conviction for non-constitutional error if we, after examining the record as a whole, have fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93.

In assessing the likelihood that the jury's decision was affected by the error, we consider everything in the record, including factors such as the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, whether the State emphasized the error, and whether overwhelming evidence of guilt was present. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014); *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003). Any such error is harmless if the same or similar evidence is admitted without objection at another point in the trial. *Nino*

11

*v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding erroneous designation of outcry witness under article 38.072 was harmless because similar testimony was admitted through complainant); *Duncan*, 95 S.W.3d at 672 (holding improper admission of outcry testimony was harmless because similar facts were admitted through complainant, pediatrician, and medical records).

As to Hanke's challenge to the admissibility of R.C.'s testimony about what L.J. told R.C., we note that R.C. was an eyewitness to the incident. Before the State elicited testimony from R.C. about what L.J. told R.C. and Officer Spears about the incident, R.C. had already testified regarding what R.C. personally observed as an eyewitness. Assuming, without deciding, that the trial court abused its discretion by allowing R.C. and Officer Spears to testify about what L.J. told them on the night of the assault, even if such testimony was not in compliance with article 38.072, we would not reverse unless the error affected Hanke's substantial rights. *See* Tex. R. App. P. 44.2(b).

Aside from Officer Spears's and R.C.'s testimony about L.J.'s testimony to them, the evidence supporting Hanke's guilty verdict includes L.J.'s testimony of the sexual assault, R.C.'s eyewitness testimony regarding what she observed when she walked in on Hanke during the sexual assault, and two admissions by Hanke.

Hanke argues that the admission of the improper testimony made the evidence against him "overwhelming" and "improperly bolstered the testimony and credibility of L.J., who was nine years old at the time of the alleged offense and eleven years old at the time of trial." Officer Spears's testimony and R.C.'s testimony regarding statements to them was cumulative of other testimony in the record. *See Sanchez*, 269 S.W.3d 169, 172 (Tex. App.—Amarillo 2008, pet. ref'd) (rejecting defendant's argument that he was harmed by admission of hearsay testimony from officer reiterating what victim told him about assaults because "what we have before us is the same evidence being presented to the jury through multiple sources to prove the same facts. It is this redundancy or cumulative nature of the evidence that proves fatal to [defendant's] argument"); *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (stating "improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial"); *Duncan*, 95 S.W.3d at 672.

After considering everything in the record, including the nature of the evidence supporting the verdict, the testimony of the victim, , the fact that similar evidence was admitted without objection from the victim as well as an eyewitness and an investigator for CPS, we are reasonably assured that any error in admitting

13

either R.C.'s testimony about what L.J. told R.C., or the Officer's testimony about what L.J. told him did not influence the jury's verdict in this case or had but a slight effect. *See* Tex. R. App. P. 44.2(b); *Schutz v. State*, 63 S.W.3d 442, 444-46 (Tex. Crim. App. 2001). Therefore, we overrule Hanke's challenge to the admission of R.C.'s testimony and the Officer's testimony.

Next, we examine Hanke's challenge to certain testimony provided by B.G., the SANE nurse. When the State began questioning B.G. regarding what L.J. told her prior to the sexual assault examination, Hanke objected arguing it was hearsay and violated Hanke's right to confront and cross-examine the witness. The State responded that the statements were non-hearsay because they were not offered for the truth of the matter asserted, and they were "history given as a result of medical examination for diagnosis" and admissible under Texas Rule of Evidence 803(4). The trial court overruled Hanke's objections.

In arguing that the trial court erred in admitting B.G.'s testimony, Hanke contends on appeal that the statements were clearly offered for the truth of the matter asserted, and that there is "no evidence in the record that L.J. knew or was aware that any statements she made were for the purpose of medical diagnosis or treatment, or that she was aware that proper diagnosis and treatment were dependent on the truth of her statements." Hanke also argues that the admission of

14

this testimony violated his constitutional right to confront and cross-examine L.J. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). We address his constitutional challenge first.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. Hanke argues that in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. at 59. *Crawford* applies only when the declarant does not testify at trial. *See id.* at 59 & n.9. Therefore, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [that witness's] prior testimonial statements." *Id.* at 59 n.9 (citing *California v. Green*, 399 U.S. 149, 162 (1970) ("For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem.")). L.J. testified at Hanke's trial and Hanke had the opportunity to confront and cross-examine L.J. We conclude that the admission of the testimony

15

from B.G. did not violate Hanke's right to confront and cross-examine L.J., and we overrule his constitutional challenge.

Next, we examine Hanke's argument that B.G.'s testimony about what L.J. told B.G. was hearsay, and that the trial court erred in overruling the hearsay objection. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d) (1999, superseded 2015). "Hearsay is not admissible except as provided by statute or [the Rules of Evidence] or by other rules prescribed pursuant to statutory authority." Tex. R. Evid. 802 (1999, superseded 2015). As to B.G.'s testimony regarding what L.J. told B.G. about the sexual assault, the State specifically informed the trial court that it sought to utilize Rule 803(4), an exception to the hearsay rule that allows for the admission of qualifying hearsay statements.

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> . . . .
> (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

16

Tex. R. Evid. 803(4) (1999, superseded 2015). For statements to be admissible under Rule 803(4), the proponent of the evidence must show that (1) the declarant was aware that the statements were made for the purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended on the veracity of the statement and (2) the particular statement offered is also "pertinent to diagnosis or treatment," that is, it was reasonable for the health care provider to rely on the particular information in treating the declarant. *Taylor v. State*, 268 S.W.3d 571, 588-91 (Tex. Crim. App. 2008); *Mbugua v. State*, 312 S.W.3d 657, 670-71 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

On appeal, Hanke cites to *Taylor* in support of his argument that that there is "no evidence in the record that L.J. knew or was aware that any statements she made were for the purpose of medical diagnosis or treatment, or that she was aware that proper diagnosis and treatment were dependent on the truth of her statements." We conclude that *Taylor* is inapposite to the facts in this case.

In *Taylor,* the Court of Criminal Appeals analyzed federal cases involving Rule 803(4) in the context of how Rule 803(4) would apply to non-medical professionals. *Id.* at 579-84. In this case, the statements were made by a victim to a sexual assault nurse examiner and were given specifically in the context of the SANE examination. We conclude that the evidence was sufficient to support an

17

inference that L.J. understood the need to be truthful during the SANE examination and the trial court did not abuse its discretion in admitting the testimony in question. *See Franklin v. State*, 459 S.W.3d 670, 674, 677-78 (Tex. App.—Texarkana 2015, no pet.) (evidence was sufficient to support an inference that the children understood the need to be truthful during the SANE evaluation and trial court did not abuse its discretion to admit SANE reports and testimony under Rule 803(4) where SANE testified that prior to the examination she identified herself as a nurse to the children; she explained to them that she was meeting with them to conduct a medical examination; she detailed the procedures of the examination to the children; and, in her opinion, the children understood that the examination was for medical diagnosis and treatment); *Prieto v. State*, 337 S.W.3d 918, 920-21 (Tex. App.—Amarillo 2011, pet. ref'd) (the SANE's testimony regarding the child-victim's statements to the nurse were not inadmissible hearsay because the trial court could have found that the child's statements to the nurse were reasonably pertinent to diagnosis or treatment under Rule 803(4) where the nurse testified as to her duties and responsibilities as a SANE, that the sexual assault examination process includes obtaining a history from the child and explaining to the child the process, that the child indicated that she understood, and how the nurse's examination, diagnosis, testing, and treatment were related to the child-

victim's account of the abuse); *see also Tuckness v. State*, No. 07-12-00235-CR & No. 07-12-00236-CR, 2013 Tex. App. LEXIS 14333, at \*\*7-11 (Tex. App— Amarillo Nov. 21, 2013, pet. ref'd), (overruling appellant's challenge to the veracity of the child-victim's statement to the SANE under Rule 803(4) because admission of the nurse's testimony regarding the child-victim's medical history portion of the examination was not outside the zone of reasonable disagreement where trial court observed the child-victim testify about seeing the nurse and giving the medical history and the reviewing court gives deference to the trial court's purview to observe the credibility and demeanor of the witnesses).

B.G. testified that she talked to L.J. in the nurse's office before going into the exam room. B.G. explained that she asked L.J. if L.J. knew why she was there. B.G. told L.J. to tell her in her own words why she was there. According to B.G., B.G. obtained a history of the assault from L.J. for the purpose of "diagnosis and treatment." B.G. testified that L.J. told her that she and her sister were getting ready to take a bath and had taken their clothes off and Hanke "put his mouth down there and then he took his – his private and rubbed it on her." The trial court could have inferred from B.G.'s testimony and from L.J.'s testimony that L.J. knew or was aware that any statements she made to B.G. were pertinent to the purpose of medical diagnosis or treatment, and that L.J. was aware that she needed

to be truthful, and that the child understood the SANE examination was for medical diagnosis and treatment. We conclude that the trial court did not abuse its discretion in admitting B.G.'s testimony regarding what L.J. told B.G. about the assault. Furthermore, even if the admission of that portion of B.G.'s testimony had been erroneous, such error would have been harmless because the same or similar evidence was also offered through the testimony of L.J., and similar testimony was provided by R.C. when R.C. testified what R.C. personally witnessed. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *Estrada v. State*, 313 S.W.3d 274, 302 n. 29 (Tex. Crim. App. 2010). Issue one is overruled.

ADMISSION OF K.S.'S TESTIMONY

In his second issue, Hanke argues that the trial court abused its discretion in "admitting irrelevant, prejudicial testimony of [K.S.] and allow[ing] [K.S.] to testify in a manner that sought to have the jury penalize Hanke for exercising his constitutional right to a jury trial and tainted the jury verdict." Hanke specifically complains about K.S.'s testimony during the guilt/innocence phase of the trial wherein K.S. stated that Hanke "took [L.J.'s] childhood away from her. He was her stepfather. He was the only father she loved, knew, and he took that away from her, and he is victimizing her again today." Hanke's counsel objected to this statement by K.S. on the grounds that the testimony was nonresponsive, not

20

relevant, and that any probative value of the testimony was outweighed by the prejudicial nature of the testimony. The trial court overruled the objections. K.S. then testified as follows:

> [Hanke] victimized [L.J.] one more time this time, this time now. There's no reason this child should have gone through what she went through today. One more time she is his victim, one more time. It's not fair to that child. He should have been man enough. You do the crime at least stand up and say, hey, I did it. Let's not waste everybody's time. Let's not hurt this child any more. She has been hurt enough. She will be affected for the rest of her life. I am a victim of child abuse. I know how she will be for the rest of her life.

On appeal, Hanke contends that the prosecutor emphasized K.S.'s testimony during closing arguments, and that "[i]nstead of improperly making the argument to the jury himself, the prosecutor and the trial court allowed this witness to make an improper plea to the jury, holding herself out as an expert in such matters as a person who was herself a victim of child abuse." According to Hanke, the trial court abused its discretion in overruling the objections and in admitting K.S.'s testimony because the testimony "improperly tainted the jury verdict and violated [his] Sixth and Fourteenth Amendment rights to a fair and impartial jury trial."

Assuming, without deciding, that the trial court erred in overruling the objections Hanke made at trial to the complained-of testimony, we conclude that on the entire record before us, the admission of K.S.'s testimony did not deprive Hanke of a fair and impartial trial nor does it amount to fundamental error. In light

21

of the other testimony and evidence presented to the jury, which included L.J.'s testimony, R.C.'s eyewitness testimony, and a CPS investigator's testimony that Hanke admitted to sexually assaulting L.J., the admission of the complained-of testimony by K.S. was harmless under Rule 44.2(b) of the Texas Rules of Appellate Procedure. Issue two is overruled.

PUNISHMENT

In Hanke's third issue, he argues that, in assessing punishment, the trial court punished Hanke for exercising his right to a jury trial in violation of his state and federal constitutional rights. Hanke complains about the statements made by the State during its closing argument during the punishment phase and the comments made by the trial court prior to the trial court's pronouncement of punishment. During closing arguments at the punishment phase, the prosecutor argued the following:

> Your Honor, I will just simply state, you've heard the testimony. You have seen the evidence. What this individual did I think [K.S.] put it best, . . . that [Hanke] stole that little girl's innocence. What he did was the most basic violation of trust and abhorrent on the most fundamental level. What price do we put on that little girl's innocence? What price do we put on what he did to her? He admitted this case or admitted this offense to no less than two people. We have [an] eyewitness[]. The evidence was overwhelming. The jury came back very, very quickly. This is a First Degree Felony, Your Honor, he is looking at 5 years up to 99 years or life. I don't know what to ask for. What price do we put on nine-year old [L.J.]'s innocence? He stands up here now saying that he is sorry, but I would

22

like to point out that he only does that after he has been convicted. Bottom line was he was banking on the fact that [R.C.] and [L.J.] would not show up to testify. That's what he was counting on, and because of that he put that little girl through that experience again. I think that should count for something as well. We're looking at up to life in prison, Your Honor. I think something in the higher end of that spectrum would be totally and completely justifiable.

Defense counsel questioned whether the State was implying or saying that, because Hanke exercised his constitutional right to a jury trial, he should be punished for exercising that right. The State responded that it was a mischaracterization of the State's argument. Now for the first time on appeal, Hanke also complains of the following comment by the trial court prior to assessing his punishment:

> . . . . [K.S.], who probably knows Mr. Hanke better than anybody, said in regard to what you said, [defense counsel], about being punished for exercising your right to trial. Of course, everybody has a right to a trial, but when the evidence is as overwhelming as it was in this case to get a verdict in 10 minutes after a day and a half trial it's unique. She said - - [K.S.] said, Let's not hurt this child any more. You have ruined her life forever. That's what [K.S.] said, and I think what she had reference to was putting this girl through this experience when it didn't have to happen. The evidence is overwhelming as the jury so appropriately said. So victimizing the girl once in the bedroom and once in this courtroom is to me a very serious compromise of what if you are [sic] going to be sorry you wouldn't do something like that. This girl's life is ruined forever. I assess punishment, Mr. Hanke, in your case and you are sentenced to serve 50 years in the Department of Criminal Justice.

23

According to Hanke, this statement by the trial court at punishment "clearly establish[ed] that the trial court punished Hanke for exercising his Constitutional rights[]" and that "the trial court's own reference to [K.S.]'s improper testimony demonstrates that her improper and prejudicial testimony influenced the jury's verdict and the court's assessment of punishment." Hanke cites to *Villarreal v. State*, 860 S.W.2d 647 (Tex. App.—Waco 1993, no pet.) in support of his argument.

In *Villarreal*, the prosecutor argued to the jury during the punishment phase of the trial that Villarreal "made a conscious decision to rape a ten-year-old child. But he didn't do it just once. He forced her to have to come into this courtroom in front of a bunch of strangers[.]" 860 S.W.2d at 649. Defense counsel objected. *Id.* The trial court sustained the objection and instructed the jury to disregard the argument for any purpose, but overruled the defendant's motion for mistrial. *Id.* The Waco Court of Appeals held that the prosecutor's argument did not fall into any of the categories of proper jury argument set out in *Alejandro v. State*, 493 S.W.2d 230, 231-32 (Tex. Crim. App. 1973). Proper jury argument must fall within one of the following categories: (1) a summation of evidence, (2) a reasonable deduction from the evidence, (3) an answer to argument of opposing counsel, or (4) a plea for law enforcement. *See id.* In reversing the judgment on

punishment only and remanding the cause for a new trial, the Waco Court of Appeals noted that "[i]f an instruction is given but a motion for mistrial is denied, error results only when the argument is extreme, manifestly improper, injects new or harmful facts into the case, or violates a mandatory statutory provision and was thus so inflammatory that its prejudicial effect could not reasonably be removed from the minds of the jury by the instruction given." *See Villarreal*, 860 S.W.2d at 649 (citing *Washington v. State*, 822 S.W.2d 110, 118 (Tex. App.—Waco 1991), *rev'd on other grounds*, 856 S.W.2d 184 (Tex. Crim. App. 1993)).

The present case is distinguishable from *Villarreal* because Hanke elected to have his punishment assessed by the trial court and not the jury. We note that prior to the trial court assessing Hanke's punishment, the prosecutor clarified that he "was not intending to imply that [Hanke] should be sanctioned for exercising his right to a jury[]" and the prosecutor explained to the court that the State was "merely wanting to point out that [Hanke] did not show any bit of remorse, despite having made two confessions and having an eyewitness[,] until he [was] found guilty."

We will not overturn a trial judge's decision on punishment absent a showing of an abuse of discretion. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). When a defendant is adjudicated guilty, he is subject to the

25

entire range of punishment for the offense. *Johnson v. State*, No. 02-12-00207-CR & No. 02-12-00208-CR, 2013 Tex. App. LEXIS 4369, at *9 (Tex. App.—Fort Worth Apr. 4, 2013, no pet.) (mem. op., not designated for publication); *see also Ditto v. State*, 988 S.W.2d 236, 239 n.7 (Tex. Crim. App. 1999). As a general rule, a sentence that is within the range of punishment established by the Legislature will not be disturbed on appeal. *Jackson*, 680 S.W.3d at 814. Hanke's possible punishment range was five to ninety-nine years or life in prison. *See* Tex. Penal Code Ann. § 12.32 (West 2011). The trial court sentenced Hanke to fifty years of confinement, which is well within the range allowed by the Legislature for the offense in question.

To the extent, if any, that Hanke is arguing that the trial court's comments show that the trial court was biased or not impartial in assessing Hanke's sentence, we note that "[j]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Further, "expressions of impatience, dissatisfaction, annoyance, and even anger[]" do not establish bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). Rather, the defendant must show "a 'deep-seated favoritism or antagonism that would make

fair judgment impossible.'" *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd) (quoting *Liteky*, 510 U. S. at 555). We find nothing in the record to establish that the trial judge was biased or prejudiced or otherwise failed to remain neutral during the punishment hearing. Issue three is overruled. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 7, 2015
Opinion Delivered September 23, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

27